IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLSTATE INSURANCE COMPANY : CIVIL ACTION
: NO. 10-4634
v. :
:
JOHN and MARY ATKINS, et al. :

O'NEILL, J.                                                                                 JUNE 14, 2011

## MEMORANDUM

On September 13, 2010, plaintiff Allstate Insurance Company filed this declaratory judgment action. Allstate seeks an Order declaring that it does not have a duty to defend or indemnify defendants John and Mary Atkins in a lawsuit filed against them by defendant-herein Susan Ricca in the Court of Common Pleas for Delaware County (civil action number 10-000817). Allstate moved for summary judgment on January 11, 2011. Proceeding pro se, the Atkinses filed a response on February 1, 2011.[1] For the following reasons, I will grant Allstate's motion.

## BACKGROUND

On February 23, 2007, the Atkinses sold the property located at 20 Oriole Avenue, Media, PA 19063 to Ricca. Prior to the sale, the Atkinses completed a "Seller's Property Disclosure Statement." The Atkinses' answers to two of the questions on the disclosure statement are at issue in the underlying lawsuit. First, the Atkinses answered "no" to the

---

[1] Allstate has also named Ricca, Re/Max Hometown Realtors and John McFadden as defendants in this lawsuit. McFadden, an employee of Re/Max, was the real estate agent of the Atkinses.
    Ricca filed an answer on December 14, 2010 but has not responded to the motion for summary judgment. See Doc. No. 10. Re/Max and McFadden never filed an answer. Accordingly, on December 15, 2010, the Clerk of Court entered default against them. On February 24, 2011, Allstate moved for an entry of default judgment against them. I will dispose of that motion in a separate Order.

question "[a]re you aware of any water leakage, accumulations or dampness within the basement or crawl space?" Second, they answered "no" to the question "[a]re you aware of any past or present hazardous substances present on the property (structure or soil) . . . ?" In addition, the Atkinses allegedly orally represented to Ricca that there were no defects in the property aside from those identified in the disclosure statement.

In alleged reliance on the Atkinses' disclosure statement and oral assurances Ricca purchased the property. She quickly concluded, however, that groundwater enters the basement of the Oriole Avenue property through the rear cinderblock wall of the house, causing up to two inches of water to pool over 120 square feet of floor space. Further investigation revealed that the basement ceiling was constructed out of three sheets of asbestos wallboard. These undisclosed defects forced Ricca to spend a substantial amount of money to remove the asbestos sheets and to prevent the reappearance of mold and mildew. She asserted that the basement leak is not correctable absent complete excavation of the surrounding area.

On April 29, 2010, Ricca sued the Atkinses, Re/Max and McFadden in the Court of Common Pleas for Delaware County for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa. Cons. Stat. §§ 2011, et seq. She asserted that "[i]nstead of undertaking repairs required [to] completely restore the Residence, the Atkins[es] concealed the evidence of asbestos, and prior leakage and/or drainage problems and/or defects in the basement of the Residence so that potential purchasers would not be able to detect them upon personal inspection." Del. Co. Compl. ¶ 27.

During the time period in which the Atkinses owned the Oriole Avenue property, they held two insurance policies with Allstate. Policy number 098678779 was a "Deluxe

Homeowners Policy" which insured the Oriole Avenue property. Policy number 918926269 was a "Personal Umbrella Policy" which provided excess insurance coverage. Allstate concedes that these policies were in force at all times relevant to this lawsuit. See Pl.'s Br. at 2.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on

3

unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

ANALYSIS

Allstate argues that it is entitled to summary judgment because neither insurance policy imposes upon it a duty to indemnify or a duty to defend the Atkinses in the lawsuit Ricca filed against them.

In Pennsylvania, "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010). "The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." Id. "In making this determination, the 'factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.'" Id., quoting Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742 (3d Cir. 1999).

I begin, then, with the terms of the insurance policies. The homeowners insurance policy provides: "[s]ubject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." See Allstate Ins. Co. Deluxe Homeowners Policy No. 098678779 at 21 (Pl.'s

4

Ex. E). The umbrella policy provides: "[t]his policy applies to an occurrence anywhere in the world that takes place during the policy period." See Pennsylvania Personal Umbrella Policy No. 918926269 at 2 (Pl.'s Ex. G). It further provides that "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury, personal injury or property damage, subject to the terms, conditions and limits of this policy. Bodily injury, personal injury and property damage must arise from a covered occurrence." See id. at 4.

Allstate argues that the circumstances giving rise to the underlying lawsuit do not constitute an "occurrence" under the terms of the applicable policies. Both policies include substantially the same definition of occurrence: "an <u>accident</u>, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." See Policy Number 098678779 at 3 (Pl.'s Ex. E) (emphasis added); Policy No. 918926269 at 2 (Pl.'s Ex. G) ("'Occurrence' means an <u>accident</u> during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury, personal injury or property damage.") (emphasis added). The policies further provide that "[Allstate does] not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." See Policy Number 09878779 at 21-23 (Pl.'s Ex. E); Policy Number 918926269 at 5-7 (Pl.'s Ex. G) ("This policy will not apply . . . to bodily injury, personal injury or property damage intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any injured person.").

I find that Allstate's duty to defend the Atkinses was not triggered by Ricca's complaint

5

against them. Review of the complaint reveals that Ricca did not allege any accidental conduct on the part of the Atkinses. Instead, she alleged that they engaged in intentionally fraudulent conduct. For example, she alleged that the Atkinses "[withheld information] from and misinform[ed] Ricca concerning the existence of the defects and hazards within the residence . . . ." Del. Co. Compl. ¶ 31. She further alleged that the Atkinses acted to "conceal the existence of the defects and hazards with the Residence . . . so that Ricca would not discover them." Id. ¶ 32. The complaint alleges no conduct on the part of the Atkinses that can fairly be characterized as accidental. See Travelers Prop. Cas. Co. of Am. v. Mericle, No. 09-1747, 2010 WL 3505117, at *7 (M.D. Pa. Aug. 31, 2010), quoting Colony Ins. Co. v. Mid-Atlantic Youth Servs. Corp., No. 09-1773, 2010 WL 817703, at *5 (M.D. Pa. Mar. 9, 2010) ("Reckless, malicious, or purposeful conspiratorial activities are not 'negligent' and cannot be considered 'accidents' under the plain language of an occurrence-based insurance policy, like the one at bar."). Therefore, the complaint does not allege an "occurrence" sufficient to trigger Allstate's duty to defend. Accord USAA Cas. Ins. Co. v. Bateman, No. 07-3700, 2008 WL 4761718, at *5-7 (E.D. Pa. Oct. 30, 2008) (applying similar definition of "occurrence" and finding "[w]hile the Underlying Plaintiffs have alleged both intentional acts and a negligent misrepresentation, courts have repeatedly held that these acts are outside the scope of an 'accident.'"); Foremost Ins. Co. v. Erickson, No. 07-0195, 2007 WL 2301119, at *4 (E.D. Pa. Aug. 7, 2007) ("Plaintiff has no duty to defend against these allegations because intentional conduct is not a fortuitous or unexpected happening and therefore does not constitute an accident."); Augenblick v. Nationwide Ins. Co., No. 99-3419, 1999 WL 975118, at *3-5 (E.D. Pa. Oct. 8, 1999) (finding that intentional and negligent misrepresentations were not "occurrences" within the meaning of an insurance policy

6

similar to the one at issue in the present case). Where there is no duty to defend there can be no duty to indemnify. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union, Ins. Co., 908 A.2d 888, 896 n.7 (Pa. 2006) ("the Superior Court has explained that because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify.").

CONCLUSION

For the reasons stated above, I will grant Allstate's motion and enter an Order declaring that Allstate does not have a duty to defend or a duty to indemnify the Atkinses in the lawsuit Ricca filed against them.[2]

An appropriate Order follows.

---

[2] Allstate offered several additional reasons in support of its argument that the underlying lawsuit did not trigger its duty to defend or to indemnify the Atkinses. First, it argued that the complaint in the underlying lawsuit did not allege that Ricca suffered "bodily injury," "property damage" or "personal injury" under the terms of the insurance policies. Second, it argued that the insurance policies expressly excluded coverage of the claims in the underlying lawsuit. I need not address either of these arguments in light of my conclusion that the lawsuit did not allege an "occurrence" as defined in the policies.